**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>ESTHER SALAS<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING<br>COURTHOUSE<br>50 WALNUT ST.<br>ROOM 5076<br>NEWARK, NJ 07101<br>973-297-4887 |

August 17, 2021

**LETTER OPINION AND ORDER**

Re: *Royal Heritage Home, LLC v. Andrew Bluestone*
    **Civil Action No. 20-4157 (ES) (CLW)**

Dear counsel:

Presently before the Court is the motion of defendant Andrew Bluestone ("Defendant") to dismiss plaintiff Royal Heritage Home, LLC's ("Plaintiff" or "RHH") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 2). Plaintiff opposes the motion and requests that this case be remanded to state court because the Court lacks jurisdiction. (D.E. No. 6 ("Pl. Opp. Br.")). As set forth below, the Court finds that it lacks subject matter jurisdiction over the instant case; it therefore does not opine on the issues raised in Defendant's motion and remands this case to state court for further proceedings.

**I.  BACKGROUND**

Plaintiff sues Defendant for violations of various state laws in connection with the sale of a retirement plan ("the Plan"). (*See generally* D.E. No. 1-1 ("Compl." or "Complaint")). Specifically, Plaintiff alleges that Defendant made certain representations to RHH's CEO about the cost of the Plan and indicated that the Plan would be completely funded from employee contributions to the Plan. (*Id.* ¶ 4). Sometime thereafter, Plaintiff was surprised by an $85,000 life insurance premium that accompanied the Plan, and Plaintiff learned that the Plan was not fully funded, resulting in a shortfall of benefits in the amount of $72,674. (*Id.* ¶¶ 7–9).

Plaintiff initially filed this action in state court alleging claims for (i) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*. ("NJCFA") (Count I[1]); (ii) intentional and negligent misrepresentation (Counts II and III); (iii) breach of the covenant of good faith and fair dealing (Count IV); and (iv) unjust enrichment (Count VII[2]). Notwithstanding the purely state law claims alleged in the Complaint, Defendant removed the matter to this Court asserting that the Court has jurisdiction because the Employee Retirement Income Security Act of 1974 ("ERISA") completely preempts Plaintiff's claims. (*See* D.E. No. 1 ("Notice of Removal") ¶ 23). Shortly thereafter, Defendant moved to dismiss all claims against him, arguing that the claims are preempted by ERISA, that ERISA does not otherwise provide a remedy for Plaintiff's allegations,

---

[1]   Plaintiff states that it intends to withdraw its claim under the NJCFA. (Pl. Opp. Br. at 20).

[2]   The Complaint jumps from Count IV to Count VII.

and that Plaintiff otherwise fails to state a claim upon which relief could be granted. (*See generally* D.E. No. 2-1 ("Def. Mov. Br.")).

Plaintiff filed an opposition to Defendant's motion and, within that opposition, included a request for remand based on the Court's lack of jurisdiction. (Pl. Opp. Br. at 10). Defendant challenges the timeliness of Plaintiff's request for remand but does not dispute that the Court has an independent obligation to remand a case where it determines that it lacks subject matter jurisdiction. (D.E. No. 7 ("Def. Reply Br.") at 13); *Newkirk v. Sentman*, No. 20-03055, 2020 WL 7310671, at *3 (D.N.J. Dec. 11, 2020) ("Although Plaintiffs did not move to remand the matter to state court, this Court has an independent obligation to address issues of subject matter jurisdiction *sua sponte* and may do so at any stage of the litigation.").

After reviewing the initial briefing, the Court determined that supplemental briefing was necessary on several issues raised in the parties' briefs. Relevant here, the Court noted that "[d]espite identifying what appear to be three distinct preemption concepts, Defendant discusses preemption as one general concept." (D.E. No. 12 at 2). Thus, the Court ordered Defendant to explain the three types of preemption raised in its moving brief and how those doctrines applied to Plaintiff's claims. (*Id.*). The Court also set oral argument for April 21, 2021. (*Id.* at 3).

The supplemental briefing was completed on April 13, 2021. (*See* D.E. No. 15 ("Def. Supp. Br."); D.E. No. 16 ("Pl. Supp. Br.")). After reviewing the supplemental briefs, the Court determined that oral argument was no longer necessary and issued a text order indicating as much. (D.E. No. 17).

With that backdrop, the Court must address the threshold question of whether it has subject matter jurisdiction over the case before addressing any other issues raised by the parties.[3]

## II. THE WELL-PLEADED COMPLAINT RULE

Courts apply the well-pleaded complaint rule to determine whether a particular case arises under federal law for purposes of subject matter jurisdiction. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). The well-pleaded complaint rule provides that the Court must look to the plaintiff's complaint to determine whether a case arises under federal law, and the existence of a federal defense normally does not suffice to confer jurisdiction on a court. *Id.*

There is, however, an exception to the well-pleaded complaint rule: "'[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." *Id.* (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). The Supreme Court has held that the ERISA enforcement mechanism found in § 502(a) (and codified at 29 U.S.C. § 1132(a)) is the type of provision that carries such extraordinary preemptive power

---

[3] Defendant does not suggest that the Court has diversity jurisdiction over the Complaint. Nor does it appear that such jurisdiction exists: neither the Complaint nor the Notice of Removal provides a basis for the Court to conclude that the amount in controversy is above the $75,000 threshold for diversity jurisdiction. The Court thus considers whether it has federal question jurisdiction, as Defendant suggests.

that it converts a state-law claim into one stating a federal claim for purposes of the well-pleaded complaint rule. *Id.* at 209–10.

### III. ANALYSIS

Defendant's position appears to be that ERISA, in its entirety, is a statute of "complete preemption," and that "[i]n order to determine whether a claim is subject to ERISA's complete preemption, it is necessary to determine whether express or conflict preemption exists." (Def. Supp. Br. at 4). However, express and conflict preemption are not subcategories of complete preemption—they are separate doctrines of ordinary preemption with distinct application to the instant lawsuit.

"Under ERISA, there are two forms of preemption: 'complete preemption' under Section 502(a), and 'ordinary preemption' under Section 514(a) [(codified at 29 U.S.C. § 1144(a))]." *Caggiano v. Prudential Ins. Co. of Am.*, No. 20-7979, 2021 WL 1050166, at *3 (D.N.J. Mar. 19, 2021) (citing *Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171 (3d Cir. 1997)). As explained *supra*, complete preemption under § 502 operates to confer original federal subject matter jurisdiction on the Court, notwithstanding the absence of a federal cause of action on the face of a complaint. *Davila*, 542 U.S. at 209. Ordinary preemption, on the other hand, only arises as a federal defense to a state-law claim, and thus does not confer jurisdiction on the Court. *See In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999); *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Thus, there is an important difference between ordinary preemption and complete preemption: "When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995). As applied here, then, the Court must first determine whether the Complaint is completely preempted under § 502 before addressing any of Defendant's arguments under § 514.

"Courts employ a two-part test to determine whether a state law claim is completely preempted under Section 502(a)—a federal court has jurisdiction over a state law claim when (1) the plaintiff could have brought the action under Section 502(a) of ERISA and (2) no independent legal duty supports the plaintiff's claim." *Caggiano*, 2021 WL 1050166, at *3 (citing *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004)).

Before analyzing the Complaint pursuant to this test, the Court notes that Defendant's arguments as to how each claim is completely preempted—under § 502 specifically—are scarce. In the Notice of Removal, Defendant claims that the case is subject to complete preemption, listing preemption arguments under §§ 502 and 514 (29 U.S.C. §§ 1132 & 1144), and citing to a number

3

of cases without additional context.[4] (Notice of Removal ¶ 23). The most particularized argument for complete preemption in the Notice of Removal is that Plaintiff is "asserting claims falling directly within the scope of the civil enforcement provisions of 29 U.S.C. § 1132(a)(3) that depend upon and are inextricably intertwined with the existence, terms, interpretations, obligations and operation of the ERISA plan." (*Id.* ¶ 27). Defendant's moving brief in support of its motion to dismiss repeats these same arguments. (*See* Def. Mov. Br. at 9–11).

In his supplemental brief, Defendant primarily relies on § 514 to argue that Plaintiff's claims are preempted. Specifically, as to the unjust enrichment and good faith and fair dealing claims, Defendant does not make *any* argument that these claims are completely preempted by § 502 and grounds his arguments in § 514. (Def. Supp. Br. at 8–10). As to the remaining misrepresentation claims, Defendant again primarily relies on § 514. (*Id.* at 6–7). However, Defendant also argues that the misrepresentation claims "could have been the subject of a civil enforcement action under 29 U.S.C. § 1132(a), since they involve beneficiaries' and participants' apparent loss of benefits under the [Plan]. As such, the claims directly implicate ERISA's principal concern with protecting the financial security of plan participants and beneficiaries." (*Id.* at 7–8 (internal quotation marks omitted)).

Turning back to the *Pascack* test, the Court finds that complete preemption is not applicable here. As to the first prong of the test, it is not entirely clear which provision or provisions within § 502(a) Defendant relies on, but it appears that §§ 502(a)(1) and (3) are implicated.[5] Those provisions provide, in relevant part, the following:

> **(a) Persons empowered to bring a civil action**
>
> A civil action may be brought--
>
> **(1)** by a participant or beneficiary--
>
>> **(A)** for the relief provided for in subsection (c) of this section, or
>>
>> **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> **(2)** by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
>
> **(3)** by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the

---

[4] Indeed, the opening line of the Notice of Removal does not reference § 502 and instead states that the Defendant removes this action "on the basis of the complete preemption provisions of ERISA, 29 U.S.C. § 1144." (Notice of Removal at 1).

[5] At times, Defendant argues that the claims are preempted because they "allege and depend upon allegations of the breach of ERISA fiduciary duties and the breach of the terms of the ERISA plan by fiduciaries." (Def. Mov. Br. at 10). Such an allegation might implicate § 502(a)(2). However, Defendant elsewhere argues that Plaintiff has no ERISA claim for breach of fiduciary duties because the type of plan at issue here is not subject to ERISA's fiduciary requirements. (*Id.* at 12–13).

4

>   plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. §§ 1132(a). In connection with the *Pascack* test, courts have stated that these provisions prompt two relevant inquiries: (i) whether the plaintiff is the type of plaintiff permitted to bring a claim; and (ii) whether the claims are the type of claims governed by the statute. *Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield*, No. 17-536, 2017 WL 4011203, at *5 (D.N.J. Sept. 11, 2017).

As to the first inquiry, it is not clear that RHH, as an employer, qualifies as a participant, beneficiary, or fiduciary entitled to bring any type of claim under § 502. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 21 (1983) ("The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties . . . ."); *Ne. Dep't ILGWU Health & Welfare Fund v. Teamsters Loc. Union No. 229 Welfare Fund*, 764 F.2d 147, 153 (3d Cir. 1985) (expressing a view that section 502 must be read narrowly and literally); *In re Est. of Sheppard*, 658 F. Supp. 729, 734 (C.D. Ill. 1987) ("Nevertheless, courts generally agree that ERISA's jurisdictional provision does not provide a civil action for employers *qua* employers.").

Defendant claims that Plaintiff's misrepresentation claims involve beneficiaries' and participants' apparent loss of benefits under the Plan but does not further elaborate on how RHH fits within the meaning of those terms.[6] (Def. Supp. Br. at 7–8). Nor is there any argument that RHH qualifies as a fiduciary. Accordingly, Defendant has not demonstrated that RHH is the type of party that can bring a claim under § 502. *Progressive Spine & Orthopaedics*, 2017 WL 4011203, at *5.

Even assuming RHH qualifies as a participant, beneficiary, or fiduciary entitled to bring a claim under § 502(a), Defendant has not demonstrated that Plaintiff's claims are the type of claims governed by § 502(a).[7] In counts two and three of the Complaint, Plaintiff seeks to recover for the alleged misrepresentations Defendant made about the cost of the Plan prior to the Plan's existence. (Compl. ¶¶ 15–22). In count four, Plaintiff alleges a breach of the covenant of good faith and fair dealing. (*Id.* ¶¶ 23–25). Based on the entirety of the Complaint, Plaintiff argues that it is not asserting a breach of the covenant of good faith and fair dealing in connection with the Plan but rather in connection with an implied agreement between the parties whereby Defendant "would search for and sell a certain retirement plan to RHH, relating to RHH's non-qualified retirement plans." (Pl. Supp. Br. at 12; Compl. ¶¶ 23–25). And finally, in count seven, Plaintiff alleges that Defendant was unjustly enriched upon his receipt of premium payments and/or commissions made from the sale of the Plan because those monies were based on the type of plan sold and were "far

---

[6] In fact, in the Notice of Removal, Defendant argues that "RHH's assertion of such claims on its own behalf is at odds with one of the most fundamental precepts of ERISA—namely, that ERISA plan assets must be maintained and preserved for the exclusive benefit of the plan's participants and beneficiaries." (Notice of Removal ¶ 17).

[7] In his reply brief, Defendant actually argues that "ERISA provides no remedy for the allegations in the Complaint." (Reply Br. at 5).

5

in excess of what he would have been entitled to under the parties' pre-plan agreement." (Pl. Supp. Br. at 13; Compl. ¶¶ 10 & 27–28).

In other words, Plaintiff does not claim entitlement to rights, benefits, or anything else under the terms of the Plan. Rather, Plaintiff seeks relief based on the misrepresentations allegedly made by Defendant before the Plan existed and pursuant to a contractual relationship that allegedly existed between the parties at that time. *See N. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co.*, No. 18-15631, 2019 WL 6317390, at *5 (D.N.J. Nov. 25, 2019) (no colorable claim for benefits under § 502 where the claims were premised on implied agreements and representations that allegedly arose in the parties' course of dealings), *report and recommendation adopted*, 2019 WL 6721652 (D.N.J. Dec. 10, 2019); *see also Atlantic Shore Surgical Assocs., PC v. Aetna Life Ins. Co., et al.*, No. 20-15622, 2021 WL 1381256, at *9 (D.N.J. Apr. 12, 2021) (similar). Accordingly, Defendant has not demonstrated that the claims could have been brought under § 502, and the first prong of the *Pascack* test is not met.

Although the Court's inquiry could end here, *see Atlantic Shore Surgical Assocs.*, 2021 WL 1381256, at *9, the Court is not persuaded that the second prong of the *Pascack* test is met either. Under that prong, a legal duty is independent if it is not based on an obligation under an ERISA plan, or if it would exist whether or not an ERISA plan existed. *New Jersey Carpenters*, 760 F.3d at 303. Again, Plaintiff's claims are based on the pre-plan conduct of Defendant and a pre-plan agreement between the parties. These claims thus arise from legal duties independent of the ERISA plan itself and are not subject to complete preemption.[8] *See Caggiano*, 2021 WL 1050166, at *4 (concluding that misrepresentation and quasi-contractual claims were not completely preempted because they arose from independent obligations); *Lapham v. Accenture, LLP*, No. 16-1394, 2016 WL 6609177, at *7 (D.N.J. Nov. 8, 2016) ("Mr. Lapham's state law claims depend on legal duties created by the terms of the Offer Letter and Accenture's promises and representations, which are generated outside the ERISA context."); *Barnert Hosp. v. Horizon Healthcare Servs., Inc.*, No. 06-3266, 2007 WL 1101443, at *11 (D.N.J. Apr. 11, 2007) (adopting report and recommendation concluding that unjust enrichment claims were not inextricably intertwined with the terms of an ERISA plan); *S.M.A. Med., Inc. v. UnitedHealth Grp., Inc.*, No. 19-6038, 2020 WL 1912215, at *8 (E.D. Pa. Apr. 20, 2020) (concluding that claims for unjust enrichment and negligent misrepresentation have a legal basis apart from ERISA); *see also Bar–David v. Econ. Concepts, Inc.*, 48 F. Supp. 3d 759, 766 (D.N.J. 2014) ("Bar–David is not suing as

---

[8] Although not framed in terms of the *Pascack* test, Defendant argues that the terms of the Plan are implicated because the relevant documents establish that the Plan was not meant to be fully funded and that, because the shortfall in benefits came three years after the Plan was in place, the shortfall must be the result of a failure to properly administer the Plan. (*See* Def. Mov. Br. at 3–7; Def. Reply Br. at 5). These arguments are more relevant to the merits of Plaintiff's claims and perhaps to the question (under § 514) whether the claims relate to an ERISA plan. *See Elite Orthopedic & Sports Med., PA v. Cigna Healthcare*, No. 16-4775, 2017 WL 1905266, at *4 (D.N.J. Apr. 20, 2017), *report and recommendation adopted*, No. 16-4775, 2017 WL 1902162 (D.N.J. May 8, 2017) ("Plaintiff has painted itself into a very small legal corner, ostensibly to avoid federal jurisdiction, claiming that its entitlement to payment is based solely on an independent contract . . . . While that claim may seem somewhat dubious based on Plaintiff's limited factual allegations, it is not subject to complete preemption under relevant Third Circuit precedent, and is not, therefore, sufficient to support removal to the United States District Court.").

a beneficiary of an ERISA plan and does not seek to enforce any rights under any potential ERISA plan.").

In sum, the Court finds that because the *Pascack* test is not met, the claims are not completely preempted under § 502.[9]

### IV. CONCLUSION

Because the claims are not completely preempted, the Court lacks jurisdiction over the Complaint and its inquiry must end here. Thus, importantly, the Court does not express any opinion on the ultimate viability of Plaintiff's claims or whether these claims are preempted under § 514. *See Dukes*, 57 F.3d at 361 ("Our holding that the district[] courts lack removal jurisdiction, of course, leaves open for resolution by the state courts the issue of whether the plaintiffs' claims are preempted under § 514(a)).

Accordingly, IT IS on this 17th day of August 2021,

**ORDERED** that because the Court lacks subject matter jurisdiction over the instant case, this matter shall be REMANDED to New Jersey Superior Court, Morris County; and it is further

**ORDERED** that the Clerk of Court mark this matter closed.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[9] Nor is the Court persuaded by Defendant's argument that jurisdictional discovery is necessary before the Court can make a determination regarding preemption and remand. (*See* Def. Reply Br. at 14; Def. Supp. Br. at 1–3). Defendant's argument in this regard, as with other arguments within his briefing, conflates the various types of preemption at issue here. Defendant has had multiple opportunities to argue why **complete** preemption applies to Plaintiff's Complaint and vests this Court with jurisdiction. Yet none of Defendant's filings (including its Notice of Removal, moving brief, reply brief, and supplemental brief) have persuasively argued this point. Thus, the Court sees no need for discovery on the issue of complete preemption.